### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 92-469** |
| **MARLO HELMSTETTER** | **SECTION I** |

## ORDER & REASONS

Before the Court is *pro se* defendant Marlo Helmstetter's ("Helmstetter") motion[1] for compassionate release under 18 U.S.C. § 3582(c)(1)(A). In his motion, Helmstetter also asks the Court to "consider my *Montgomery* juvenile claim while it's deciding my review for COVID-19."[2] The government opposes the motion for compassionate release and states, with respect to the *Montgomery* claim, that "this is an improper procedural vehicle to introduce such an argument."[3] For the following reasons, the motion for compassionate release is denied; the *Montgomery* claim is dismissed without prejudice.

### I.

Helmstetter was convicted of five felony counts in 1993: conspiracy to possess cocaine with the intent to distribute (Count 1), murder in aid of racketeering activity (Counts 9 and 10), aggravated assault in aid of racketeering activity (Count 11), and

---

[1] R. Doc. No. 1246; *see also* R. Doc. No. 1254 (supplemental "motion" by Helmstetter in support of his first motion for compassionate release). That second motion re-asserts the same arguments made in the first motion, so the Court considers both as one.

[2] R. Doc. No. 1246, at 4.

[3] R. Doc. No. 1248, at 3 n.3.

using and carrying a firearm in aid of drug trafficking activity (Count 15).[4] The Court sentenced Helmstetter to three life sentences each for Counts 1, 9, and 10; 240 months' imprisonment for Count 11; and 60 months for Count 15.[5] All sentences were to be served consecutively.[6] The Fifth Circuit affirmed on all counts, *United States v. Tolliver*, 61 F.3d 1189 (5th Cir. 1995), but this Court later vacated his conviction and sentence on Count 15.[7] Helmstetter is currently incarcerated at FCI Yazoo City Medium ("Yazoo City").[8]

## II.

Helmstetter requests compassionate release under 18 U.S.C. § 3582(c)(1)(A).[9] He provides copies of two requests for compassionate release, both addressed to his warden: (1) a copy of a typed message sent on July 4, 2020,[10] and (2) a copy of a handwritten note on a Bureau of Prisons ("BOP") form dated July 8, 2020.[11]

---

[4] R. Doc. No. 1185, at 1. Helmstetter's roles in the conspiracy included "firearms procurer and storer" and "gunman and enforcer." *Tolliver*, 61 F.3d at 1196.
[5] R. Doc. No. 1185, at 1.
[6] *Id.*
[7] *Id.* at 1–2 (citing R. Doc. No. 1178, at 2).
[8] *Inmate Locator*, BOP, https://www.bop.gov/inmateloc/ (last visited January 28, 2021).
[9] R. Doc. No. 1246.
[10] R. Doc. No. 1246-3, at 2 ("I'm requesting to be reviewed for compassionate release under Covid-19 motion. I have been in prison 30 years. I'm 48 years old and I am on Chroine Care [sic] for High Blood Pressure[.] Would you please consider this letter.").
[11] *Id.* at 1 (stating "I haven't had a write up in over 6 years, I've completed many programs. I'm 48 years old and I am on Chronic Care for, High Blood Pressure. Would you please consider this Request. PS I sent a cop-out to you via email requesting Covid-19 Compassionate Release on July 4, 2020.").

Helmstetter also provides a copy of a message he sent, dated July 4, 2020, to the prison's Health Services, "requesting a copy of my Medical Records."[12]

Helmstetter, who is 49 years old[13] and has "been incarcerated since [he] was a juvenile,"[14] argues that his age and hypertension expose him to a risk of "serious illness."[15] Helmstetter argues that "despite management with medications and other therapeutic intervention,"[16] if he were to contract COVID-19, his chronic condition "will still progress and may result in serious complications."[17]

Helmstetter also argues that he is at greater risk of COVID-19 because of the conditions at Yazoo City.[18] Helmstetter states that "inmates are not being tested" and that members of the prison staff "fill in for each other throughout the complex, going from one prison to the other not knowing what inmates or staff members may be asymptomatic."[19] He argues that the "prison environment can facilitate [COVID-19's] spread" and explains that "[e]ven if inmates are housed in individual cells, we typically share the same ventilation system."[20] "The unprecedented an[d] extraordinarily dangerous nature of the COVID-19 pandemic,"[21] Helmstetter concludes, constitutes extraordinary and compelling reasons warranting relief.

---

[12] *Id.* at 3.

[13] *See* R. Doc. No. 1246, at 4 (stating "I will be 49 years old in October").

[14] *Id.* at 1.

[15] *Id.* at 2. *See* R. Doc. No. 1248-4 (Helmstetter's BOP medical records, confirming that he suffers from hypertension).

[16] *See* R. Doc. No. 1246, at 3 (listing Helmstetter's medications).

[17] *Id.*

[18] *Id.* at 2–4.

[19] *Id.* at 2.

[20] *Id.* at 3.

[21] *Id.*

Helmstetter also claims that if he were granted compassionate release, he "would not be a burden on the state" because "a good family & friend support system" and "meaningful job" await him.[22]  He appends copies of numerous certificates he has been awarded for completing various programs in prison.[23]  He also attaches five letters from friends,[24] family, and acquaintances attesting generally to his "growth spiritually and emotionally" through the years and the community he has outside prison.[25]  His nearly 20-year-old "treatment plan," also attached, lists his "treatment activity" as "weekly anger management classes"[26]—though it is unclear whether he is still participating in this treatment plan.

The government opposes Helmstetter's motion on the merits,[27] arguing that it should be denied because he has failed to establish that he suffers from a medical condition that presents an "extraordinary and compelling" reason warranting his release.[28]  Citing the Centers for Disease Control and Prevention ("CDC"), the government explains that hypertension "might" increase Helmstetter's risk of severe illness but is not "a condition that definitely subjects him to a greater risk of severe

---

[22] R. Doc. No. 1248, at 4.

[23] R. Doc. No. 1246-2, at 1–11, 13–30.

[24] R. Doc. No. 1246-1, at 6 (stating "I've known Marlo Helmstetter since he was 15 years old since 1985. . . . He is a very nice, kind young man who just got caught up with the wrong crowd at a very young tender age of 15.").

[25] R. Doc. No. 1246-1, at 1.

[26] R. Doc. No. 1246-2, at 12.

[27] The government concedes the facts necessary to find that Helmstetter has exhausted his administrative remedies. *See* R. Doc. No. 1248, at 2.

[28] *Id.* at 3, 11 (arguing that "Helmstetter fails to satisfy his burden to establish 'extraordinary and compelling reasons' to warrant a reduction, to prove that he suffers from one or more medical condition(s) which constitute a CDC risk factor or presents a likelihood of a severe outcome from COVID-19").

illness, should he contract COVID-19."[29]  Even if it did, the government concludes
compassionate release is still improper because Helmstetter's "prior conduct—both
before and during his current period of incarceration—establishes he would be a
danger to the safety of the community if the Court were to grant his release."[30]

## III.

At the outset, the Court must clarify what it is and is not addressing here.
Helmstetter asks the Court to "consider my *Montgomery* juvenile claim while it's
deciding my review for COVID-19."[31]  He continues, "in my last appeal with a private
attorney, counsel asked the Court to review my sentence under *Montgomery v.
Louisiana* because the charges I was convicted of happened when I was still a juvenile
(14 years old)."[32]  The government responds in a footnote, arguing in full:

> Helmstetter references other, immaterial grounds in the instant motion,
> specifically a request to review and/or vacate a portion of his sentence
> in accordance with *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), as
> revised (Jan. 27, 2016).  *See* Doc. No. 1236 at 4, 5.  The docket of this

---

[29] *Id.* at 14–15.

[30] *Id.* at 1.

[31] R. Doc. No. 1246, at 4 (emphasis in original). *Montgomery v. Louisiana*, 136 S. Ct.
718 (2016), held that *Miller v. Alabama*, 567 U.S. 460, 470 (2012)—which prohibited
sentences of mandatory life without parole for juvenile offenders—was a substantive
rule of constitutional law that applied retroactively. *Montgomery*, 136 S. Ct. at 736
(citing *Teague v. Lane*, 489 U.S. 288, 310 (1989)).  Accordingly, the Supreme Court
instructed that such "prisoners . . . must be given the opportunity to show their crime
did not reflect irreparable corruption; and, if it did not, their hope for some years of
life outside prison walls must be restored."  *Id.* at 736–37 (adding that "[t]he
opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s
central intuition—that children who commit even heinous crimes are capable of
change").

[32] *Id.* at 5; *see also* R. Doc. No. 1253, at 7–9 (explaining that his *Montgomery* argument
is a factor the Court should consider when determining whether compassionate
release is appropriate).

matter reflects that Helmstetter has made no such claim.  Moreover, this is an improper procedural vehicle to introduce such an argument.[33]

Since neither Helmstetter nor the government briefed the *Montgomery* issue in detail, the Court is not equipped to address this argument as part of the instant motion.  To the extent Helmstetter seeks relief under § 2255 and *Montgomery*, he should file the appropriate motion.  As ordered below, any claim that Helmstetter asserts under *Montgomery* here is dismissed without prejudice to his right to re-urge it through the appropriate means.

## IV.

As for compassionate release: the general rule is that "[t]he court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  That general rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[34]  For such a motion to be properly before the court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a compassionate release request] by the warden of the defendant's facility, whichever is earlier."  *Id.* § 3582(c)(1)(A).

The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction."  *Id.*  The court must also conclude,

---

[33] R. Doc. No. 1248, at 3 n.3.
[34] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion.  *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual. The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release. Previously, only the Director of the BOP—not defendants on their own—could move for compassionate release. The First Step Act changed that. However, the Sentencing Commission's policy statements have lagged behind. Because these policy statements have not been amended since the enactment of the First Step Act, portions of them now appear to squarely contradict 18 U.S.C. § 3582(c)(1)(A). For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants). U.S.S.G. § 1B1.13, Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons . . . ."); *see also United States v. Perdigao,* No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy). This raises a significant question: whether courts, instead of the BOP exclusively, have discretion

to determine which reasons are sufficiently extraordinary and compelling to fall under the policy statement's catch-all, 'other reasons' category. *See United States v. Ruffin*, 978 F.3d 1000, 1006–08 (6th Cir. 2020) (collecting cases and describing the debate). Courts are split on the matter. *See id.*

For its part, the Fifth Circuit has recognized that the policy statement, notwithstanding this discrepancy, should still at least "inform[] [its] analysis." *Thompson*, 984 F.3d at 433. And as to whether courts (rather than exclusively the BOP) have discretion to find 'other reasons' that are extraordinary and compelling—even if those reasons are not expressly addressed by the policy statement's guidance on (1) medical conditions, (2) age, and (3) family circumstances—the Fifth Circuit has "opt[ed] not to weigh in." *Id.* at 433 n.4.

This Court need not weigh in either. That is because it finds, as discussed below, that (1) Helmstetter's medical condition does not qualify under the policy statement as extraordinary and compelling, (2) there are no 'other reasons' that could be extraordinary and compelling, and (3) even if there were extraordinary and compelling reasons, Helmstetter has not carried his burden to show that the applicable § 3553(a) factors justify his release.

## A.    Exhaustion of Administrative Remedies

Section 3582, as mentioned above, allows a court to consider a defendant's compassionate-release motion only after the defendant exhausts administrative remedies, or 30 days elapse after the defendant submits a compassionate-release request to the warden. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Franco*, 973

F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement is "*not* jurisdictional but . . . *is* mandatory") (emphasis in original).  As stated previously, the government concedes that Helmstetter satisfied this requirement.[35]  Accordingly, the Court may consider Helmstetter's motion.  *See* 18 U.S.C. § 3582(c)(1)(A).

## B.   Extraordinary and Compelling Reasons

The Sentencing Commission's policy statement "informs" this Court's analysis of whether Helmstetter has presented extraordinary and compelling reasons that justify his release.  *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *Perdigao*, 2020 WL 1672322 at *2.  Again, the policy statement provides four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'"  *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

Neither Helmstetter's age (49)[36] nor his family circumstances[37] qualify as extraordinary or compelling under the policy statement.  Therefore, the only remaining possible grounds are his medical conditions or "other reasons" that the

---

[35] R. Doc. No. 1248, at 2 (stating that "[o]n about July 8, 2020, Helmstetter filed an administrative request with FCI Yazoo City Medium personnel (which appears to have been forwarded to the facility's warden)").

[36] R. Doc. No. 1246, at 2.  The Commission's policy statement requires a minimum age of 65 years, in addition to other criteria, for age to constitute an extraordinary and compelling reason.  *See* U.S.S.G. § 1B1.13 cmt. 1(B).

[37] As to family circumstances, the policy statement requires either (1) death or incapacitation of the caregiver of the defendant's minor child(ren), or (2) the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."  U.S.S.G. § 1B1.13 cmt. 1(C).  Helmstetter has shown neither.

Court may find extraordinary and compelling. *See id.* The Court concludes that neither are sufficient.

### 1. *Medical Conditions*

A medical condition qualifies as extraordinary and compelling under the Commission's policy statement if it is either a (1) "terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)," or (2) "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)(i)–(ii)).

Helmstetter has hypertension that, by all accounts, is being effectively managed by the treatment he receives from the BOP.[38] That shows that Helmstetter is able to "provide self-care" for his hypertension from within prison—all that is required by the policy statement. U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)(ii); *see also Thompson*, 984 F.3d at 433 (finding sufficient that the hypertension was being "managed effectively by medication"); *United States v. Mazur*, No. 18-68, 2020 WL 2113613, at *3 (E.D. La. May 4, 2020) (Africk, J.) ("Courts have also taken into account the quality of healthcare provided to the defendant while incarcerated[.]"). Nor does Helmstetter argue that his hypertension is terminal.

---

[38] R. Doc. No. 1246, at 2–3 (stating that "I am a Chronic Care inmate on high blood pressure medication" and listing medications); *see* R. Doc. No. 1248-4, at 12 (BOP medical records listing Helmstetter's active prescriptions).

Therefore, viewing that condition in isolation, it is neither extraordinary nor compelling.

Nor would Helmstetter's hypertension, even if considered alongside his age (49)[39] and risk of contracting COVID-19, be extraordinary or compelling.[40] The Fifth Circuit recently affirmed the denial of compassionate release for a 43-year-old inmate with hypertension, high cholesterol, and who had suffered a stroke ten years prior. *Thompson*, 984 F.3d at 432–33. The court noted that "nearly half" of American adults have hypertension, rendering the inmate's condition far from "extraordinary." *Id.* at 434. Helmstetter, though six years older than that inmate, neither suffers from high cholesterol, nor has he had a stroke.

The Court therefore cannot conclude that Helmstetter's situation is compelling—it is at least less compelling than Thompson's, which was still insufficient. For example, the CDC has recently advised that those with hypertension "*might* be at an increased risk for severe illness" from COVID-19.[41] That is to be distinguished from a separate category of comorbidities (*e.g.*, cancer, COPD, sickle cell disease), the sufferers of which the CDC definitively states "*are* at increased risk

---

[39] R. Doc. No. 1246, at 4 ("I will be 49 years old in October[.]").

[40] *See COVID-19: Older Adults*, Centers for Disease Control and Prevention (updated Dec. 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html ("[P]eople in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older.").

[41] *COVID-19: People with Certain Medical Conditions*, Centers for Disease Control and Prevention (updated Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis added).

of severe illness" from COVID-19.[42]   All told, Helmstetter's risk of serious illness is too speculative to be compelling. *See Thompson*, 984 F.3d at 434–35.   Other courts have concluded the same based on analogous facts.[43]

### 2.   *Other Possible Reasons*

Nor do Helmstetter's concerns regarding COVID-19 warrant compassionate release.   The BOP is undertaking measures to curb the spread of COVID-19 and to limit inmates' risk of contracting it.[44]   Helmstetter has alleged only a general concern that being incarcerated increases his risk of COVID-19 infection and that this "may result in serious complications" because of his hypertension and age.[45]   Numerous courts—including the Fifth Circuit—have concluded that such broad allegations do not warrant a sentence reduction under § 3582. *See, e.g., Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release.").[46]   Moreover,

---

[42] *Id.* (emphasis added).   The Court obviously declines to opine, however, whether such conditions, viewed in combination with the risk of COVID-19 complications, would categorically be either extraordinary or compelling.   It notices this distinction only to observe that Helmstetter's condition is not compelling.

[43] *United States v. Adams*, No. 16-86, 2020 WL 3026458, at *1 (D. Conn. June 4, 2020) (denying compassionate release for a 59-year-old with hypertension); *United States v. Takewell*, No. 14-36, 2020 WL 4043060, at *5 (W.D. La. July 17, 2020) (denying compassionate release for a defendant suffering from hypertension and obesity); *United States v. Alexander*, No. 14-126, 2020 WL 2468773, at *5 (M.D. La. May 13, 2020) (denying compassionate release because, among other reasons, hypertension was not by itself sufficiently extraordinary); *United States v. Roberts*, No. 15-135, 2020 WL 2130999, at *3 (W.D. La. May 5, 2020) (stating that the defendant's "proffered reason of hypertension fails to meet the standard for compassionate release").

[44] *See* R. Doc. No. 1248, at 3–8 (describing the safety measures and precautions taken by the BOP to address the risks of COVID-19).

[45] *See* R. Doc. No. 1246, at 2–3.

[46] *See also United States v. Clark*, No. 17-85, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the *fear* of contracting

the existence of COVID-19 at Yazoo City alone[47] cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

## C.   Years in Prison

Helmstetter also contends that he should be considered for release because, according to him, he has served 30 years in prison, and "the law surrounding compassionate release allows an inmate to request compassionate release after an inmate has served over 30 years, even without medical conditions."[48]   Helmstetter is mistaken.

The relevant statutory provision provides that a court may grant a sentence reduction—irrespective of whether extraordinary and compelling reasons exist— where:

> the defendant *is at least 70 years of age*, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, *and* a determination has been made by the Director of the Bureau of Prisons

---

a communicable disease warrants a sentence modification.") (emphasis in original); *United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.") (quoting *United States v. Eberhart*, No. 13-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)); *United States v. Gileno*, No. 19-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

[47] As of January 28, 2021, five inmates and six staff members are currently testing positive for COVID-19 at Yazoo City.  145 inmates, and ten staff members, have recovered from prior infections.  No inmates or staff there have died from COVID-19. *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 28, 2021).

[48] R. Doc. No. 1246, at 5.

that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g).

18 U.S.C. § 3582(c)(1)(A)(ii) (emphasis added). Even if Helmstetter has served 30 years in prison (and the government contests that assertion),[49] he is not "at least 70 years of age," as required by the statute. *Id.* Since Helmstetter is 49,[50] he does not qualify for release under 18 U.S.C. § 3582(c)(1)(A)(ii).

### D.   Section 3553(a) Factors

Even if the Court were to find that Helmstetter's circumstances presented extraordinary and compelling reasons to grant compassionate release, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it could not conclude that compassionate release is warranted. *See* 18 U.S.C. § 3582(c)(1)(A). The most applicable factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) the "need for the sentence imposed– (A) to reflect the seriousness of the offense, [or] to promote respect for the law . . . ; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C). Considering these factors, a sentence reduction is inappropriate.

---

[49] R. Doc. No. 1248, at 2 (stating on August 31, 2020 that "Helmstetter has spent approximately 27 years, 11 months in prison"); R. Doc. No. 1248-1, at 3 (stating on August 28, 2020 that Helmstetter had served 27 years, 10 months, and 27 days).
[50] R. Doc. No. 1246, at 4 ("I will be 49 years old in October[.]").

Helmstetter is currently serving three life sentences, to be followed by an additional 240 months,[51] for "committing murder and other violent crimes in aid of racketeering activity." *Tolliver*, 61 F.3d at 1196.  The underlying drug conspiracy distributed "approximately 1000 kilograms of cocaine" (or nearly two-and-a-quarter tons) in and around New Orleans, and Helmstetter was a "gunman and enforcer" and "firearms procurer and storer" for the conspiracy. *Id.*  The government is correct to describe Helmstetter as "the antithesis of a non-violent inmate."[52]   While incarcerated, Helmstetter's documented disciplinary infractions include two instances of "fighting," six instances of assault (five without serious injury; one with serious injury), and three instances of possessing a dangerous weapon—including (in one instance) a nine-inch "metal rod [with a] lanyard hidden in a locker."[53]  Though the Court notes that the most recent of these documented infractions occurred more than seven years ago,[54] Helmstetter's history demonstrates that he would be a danger to the community if released.

Helmstetter's sentence is therefore justified chiefly as a means of protecting the public from future crimes—violent crimes—that he may commit if released.  18 U.S.C. § 3553(a)(1), (2)(C).  His serious sentence also reflects the seriousness of the offense—a massive and violent drug conspiracy that blighted New Orleans.  *See* 18

---

[51] R. Doc. No. 1185, at 1 (stating that "all sentences [are] to be served consecutively").
[52] R. Doc. No. 1248, at 19; *see also id.* at 18–19 (quoting *Tolliver*, 61 F.3d at 1214, 1218) ("While in jail . . . Helmstetter discussed his desire to reassociate with the gang to take care of their 'business,' to get back in the 'game, and' to 'have his gun ready for him when he was released.'" (alterations omitted)).
[53] R. Doc. No. 1248-2, at 1–6.
[54] *Id.* at 1.

U.S.C. § 3553(a)(2)(A).  Although perhaps less compelling, his sentence may also be justified as a means of promoting respect for the law and to deter future similar conduct.  *See* 18 U.S.C. § 3553(a)(2)(B)–(C).

Further, to the extent the Court is bound by 18 U.S.C. § 3582(c)(1)(A) to consider—because it may be "applicable"—the now-stale policy statement described in detail above,[55] that only reinforces its conclusion.  That policy statement *requires* the Court to find that Helmstetter "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before granting compassionate release.  U.S.S.G. § 1B1.13(2), Policy Statement.  The Court has already found the opposite; therefore, to grant compassionate release would not be "consistent with" that policy statement, assuming it is applicable.  18 U.S.C. § 3582(c)(1)(A).

Accordingly, regardless of whether the Court uses as its yardstick the § 3553(a) factors or the policy statement alone, both require denial of Helmstetter's motion—irrespective of whether extraordinary and compelling reasons exist.

## V.

Having found that there are no extraordinary or compelling reasons justifying a sentence reduction, and after reviewing the § 3553(a) factors and considering the

---

[55] *See supra* the introduction to part IV.  Again, the Court is hesitant to conclude that the policy statement is "applicable"—as its text clearly implies it is applicable only to motions filed by the BOP.  *Id.*  That said, the Fifth Circuit has used it to at least "inform[]" its analysis, *Thompson*, 984 F.3d at 433, and this Court follows that approach.

16

Sentencing Commission's (potentially) applicable policy statement, the Court must conclude that compassionate release is not warranted.

Accordingly,

**IT IS ORDERED** that Helmstetter's motions[56] for compassionate release under 18 U.S.C. § 3582(c)(1)(A) are **DENIED**.

**IT IS FURTHER ORDERED** that to the extent Helmstetter's *Montgomery* argument is construed as a separate claim, it is **DISMISSED WITHOUT PREJUDICE** to his right to re-urge it in the appropriate motion.

New Orleans, Louisiana, January 29, 2021.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[56] R. Doc. Nos. 1246, 1254.