UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 92-469** |
| **MARLO HELMSTETTER** | **SECTION I** |

### ORDER & REASONS

Before the Court is defendant Marlo Helmstetter's ("Helmstetter") motion[1] for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Helmstetter also filed a supplemental memorandum[2] in support of his motion. The government filed a response[3] in opposition. With leave of Court, Helmstetter filed a reply[4] and an additional reply.[5] For the following reasons, the Court **DENIES** Helmstetter's motion.

### I.    BACKGROUND

Helmstetter was convicted of five felony counts in 1993: conspiracy to possess cocaine with the intent to distribute (Count 1), murder in aid of racketeering activity (Counts 9 and 10), aggravated assault in aid of racketeering activity (Count 11), and using and carrying a firearm in aid of drug trafficking activity (Count 15).[6] The Court sentenced Helmstetter to three life sentences for each of Counts 1, 9, and 10; 240

---

[1] R. Doc. No. 1369.
[2] R. Doc. No. 1371.
[3] R. Doc. No. 1372.
[4] R. Doc. No. 1376.
[5] R. Doc. No. 1377.
[6] R. Doc. No. 1185, at 1.

months' imprisonment for Count 11; and 60 months for Count 15.[7] All sentences were to be served consecutively.[8] The Fifth Circuit affirmed on all counts, *United States v. Tolliver*, 61 F.3d 1189 (5th Cir. 1995), but another section of the Court later vacated his conviction and sentence as to Count 15.[9] Helmstetter is currently incarcerated at the United States Penitentiary in Beaumont, Texas.[10]

Helmstetter filed his first motion for compassionate release in August 2020, citing his health ailments in light of the COVID-19 pandemic as grounds for relief.[11] Helmstetter also highlighted the length of his incarceration, his youth at the time of his arrest and conviction, his efforts at rehabilitation while in prison, and his support network at home as reasons the Court should consider compassionate release.[12] This Court denied his motion after determining that "Helmstetter's risk of serious illness is too speculative to be compelling."[13] This Court also found that "[n]either Helmstetter's age (49) nor his family circumstances qualify as extraordinary or compelling under the policy statement."[14] Finally, the Court held that even if Helmstetter had presented an extraordinary and compelling circumstance, the factors set forth in 18 U.S.C. § 3553(a) would nonetheless preclude his release.[15]

---

[7] *Id.*
[8] *Id.*
[9] *Id.* at 1–2 (citing R. Doc. No. 1178, at 2).
[10] *Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited December 17, 2025).
[11] *See* R. Doc. No. 1327.
[12] *Id.*
[13] R. Doc. No. 1255, at 12.
[14] *Id.* at 9.
[15] *Id.* at 14.

Helmstetter filed a second motion for compassionate release in December 2022.[16] His second motion asked the Court to reconsider its prior motion for compassionate release in light of the Supreme Court's decision in *Concepcion v. United States*,[17] which held that the "First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." 597 U.S. 481, 500 (2022). Helmstetter argued that the Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013), constituted intervening changes in law that justified reducing his sentence.[18] He also argued that changes in the application of the Guidelines caused a "gross disparity" between his sentence and those of similarly situated defendants.[19]

The Court also denied[20] Helmstetter's second motion for compassionate release. It held that *Concepcion* does not alter "the threshold requirements parties seeking compassionate release must first satisfy: a finding by the Court that the § 3553 factors do not warrant the defendant's continued incarceration and the existence of 'extraordinary and compelling' circumstances which justify compassionate release."[21] Notably, although it found that it "may consider the defendant's youth at the time of his offense and conviction when determining whether extraordinary and compelling circumstances exist,"[22] it also found no need to "weigh

---

[16] *See* R. Doc. No. 1304.
[17] *See id.* at 1–2.
[18] R. Doc. No. 1327, at 5.
[19] R. Doc. No. 1306, at 1.
[20] R. Doc. No. 1327.
[21] *Id.* at 7.
[22] *Id.* at 11.

all of the multiple factors which support and fail to support Helmstetter's position" because Helmstetter could not satisfy the § 3553(a) prong of the compassionate release analysis.[23]

Spurred by semi-recent Sentencing Guidelines amendments, Helmstetter filed the motion[24] for compassionate release now before the Court in October 2025. He also filed a supplemental memorandum[25] in support of his motion. He asks the Court to sentence him to time served or, in the alternative, to reduce his sentence to 450 months.[26] The government filed a response[27] in opposition accusing Helmstetter of merely "mirror[ing] his last motion for compassionate release," which this Court denied.[28] Additionally, the government contends that binding Fifth Circuit precedent precludes the pathway to relief relied on by Helmstetter, notwithstanding the recent Guidelines amendments.[29] On November 18, 2025, Helmstetter requested an additional 21 days to file a reply, which this Court granted.[30] Helmstetter filed his reply[31] on November 26, 2025, and he filed an additional reply[32] on November 28,

---

[23] *See id.* at 13.
[24] R. Doc. No. 1369.
[25] R. Doc. No. 1371
[26] R. Doc. No. 1369-1, at 2.
[27] R. Doc. No. 1372.
[28] *Id.* at 1.
[29] *Id.* at 4–5.
[30] *See* R. Doc. Nos. 1373, 1374. Helmstetter's motion also sought appointment of counsel for purposes of filing his reply, but this Court denied that portion of Helmstetter's motion. *See* R. Doc. No. 1374.
[31] R. Doc. No. 1376.
[32] R. Doc. No. 1377.

4

2025. For the reasons set forth below, the Court denies Helmstetter's motion to reduce his sentence.

## II. STANDARD OF LAW

### a. *Exhaustion*

Before a district court assesses the merits of a motion for compassionate release, a defendant must show that he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or that "30 days [have passed] from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The Fifth Circuit has emphasized that "all requests for compassionate release must be presented to the Bureau of Prisons before they are litigated in the federal courts." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 920 (2020). Failure to satisfy this prerequisite is not jurisdictional, but exhaustion is a mandatory claim-processing rule that must be enforced if invoked by the government. *Id.* at 468–69. The defendant bears the burden of demonstrating exhaustion. *See, e.g.*, *United States v. Rodriguez*, No. 15-198, 2020 WL 5369400, at *2 (E.D. La. Sept. 8, 2020) (Feldman, J.); *United States v. Castro*, No. 15-309, 2020 WL 3076667, at *2 (E.D. La. June 10, 2020) (Africk, J.).

### b. *Extraordinary and Compelling Reasons*

A district court "may" grant a reduction in sentence if, in addition to "considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a

5

reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "[T]he district court may deny [the defendant's] motion without reaching the Section 3553(a) factors if it determines that he has not identified 'extraordinary and compelling reasons' justifying his release." *United States v. Jackson*, 27 F.4th 1088, 1093 n.8 (5th Cir. 2022).

Before granting a motion for reduction in sentence, a court must also conclude that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The most relevant policy statement, codified at U.S.S.G. § 1B1.13, was amended shortly after this Court's denial of Helmstetter's second motion for compassionate release, and it became effective on November 1, 2023. *See* U.S.S.G. § 1B1.13; *see also* Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, 88 Fed. Reg. 28254, 28254 (effective Nov. 1, 2023).

As amended, policy statement § 1B1.13 applies to motions brought by the Bureau of Prisons or by the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A). *Id.* § 1B1.13(a). It provides that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof": (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) the defendant having been a victim of abuse while in custody; (5) "other reasons"; (6) a change in law that would "produce a gross disparity" between the defendant's sentence and the sentence likely to be imposed today if the defendant has served at least 10 years of an "unusually long sentence." *Id.* §§ 1B1.13(b)(1)–(6). Section 1B1.13(c) explicitly limits a district court's consideration of a change in the law, for

purposes of determining whether extraordinary and compelling reasons exist, to those circumstances that satisfy § 1B1.13(b)(6). *See id.* § 1B1.13(c).

### c. *Dangerousness*

Additionally, the policy statement requires a court to determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before reducing his term of imprisonment. U.S.S.G. § 1B1.13(a)(2). The relevant § 3142(g) factors are as follows: (1) "the nature and circumstances of the offense charged[;]" (2) "the weight of the evidence against the person[;]" (3) "the history and characteristics of the person[;]" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release[.]" 18 U.S.C. § 3142(g); *see also United States v. King*, No. 06-658, 2023 WL 7194866, at *6–7 (N.D. Cal. Nov. 1, 2023) (analyzing these factors pursuant to U.S.S.G. § 1B1.13(a)(2)).

### d. *18 U.S.C. § 3553(a) Factors*

If a court determines that extraordinary and compelling reasons exist that warrant a sentence reduction, the court must consider the applicable factors set forth in § 3553(a) in fashioning a new sentence. *United States v. Ciprano*, No. 92-350, 2022 WL 503742, at *4 (E.D. La. Feb. 18, 2022) (Fallon, J.). The burden is on the defendant to convince the district judge to exercise its discretion to grant the motion after considering the 3553(a) factors. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

7

(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range [provided for in the U.S.S.G.] . . .
(5) any pertinent [Sentencing Commission] policy statement—
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III.   ANALYSIS

#### a. *Exhaustion*

Helmstetter sent two requests to the warden of his facility of incarceration regarding the present motion: one on June 17, 2025, and another on August 28, 2025.[33] He states in his motion that the warden has not responded to these requests.[34] The government does not dispute that Helmstetter has satisfied the exhaustion requirement.[35] Because thirty days have lapsed since the warden's receipt of Helmstetter's requests, the Court concludes that Helmstetter has satisfied the administrative exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).

---

[33] *See* R. Doc. No. 1369-2, at 2–3.
[34] *Id.*
[35] *See generally* R. Doc. No. 1372.

8

### b. *Extraordinary and Compelling Circumstances*

Helmstetter's motion relies heavily on his belief that previously made arguments fare better given the recent amendment to policy statement § 1B1.13 of the U.S. Sentencing Guidelines. Indeed, he highlights that the amended § 1B1.13(b)(6) "was not available at the time [he] filed"[36] his last compassionate release motions and argues that it "now allows a finding of extraordinary and compelling reasons in his case."[37]

For example, as Helmstetter argued in his second motion for compassionate release, he argues that *Booker* and *Alleyne* constitute changes in the law that justify reducing his sentence, but he now argues that these decisions constitute changes in the law for purposes of § 1B1.13(b)(6) because they produce a gross disparity between the sentence he is serving and the sentence that would likely be imposed if he were sentenced today.[38] Specifically, Helmstetter contends that the Court would not be faced with sentencing him to a mandatory life sentence after *Booker* and *Alleyne* because, after *Booker,* the guideline ranges produced by the Sentencing Guidelines were no longer mandatory[39] and, after *Alleyne,* the sentencing judge would not have been permitted to make the non-jury judicial application of the first-degree murder cross reference to U.S.S.G. § 2A1.1, which increased his guideline range from 292–365 months to life.[40]

---

[36] R. Doc. No. 1377, at 1.
[37] R. Doc. No. 1369-1, at 4.
[38] *Id.* at 4–6; *id.* at 6 n. 3; R. Doc. No. 1371, at 1–3.
[39] R. Doc. No. 1369-1, at 5.
[40] *Id.* at 17; *see also id.* at 6 n. 3; R. Doc. No. 1371, at 1–3.

9

Helmstetter also submits that extraordinary and compelling "other reasons" should be taken into account,[41] pursuant to the amended § 1B1.13(b)(5), such as his difficult upbringing, his dedication to rehabilitation, and his youthful age at the time of his conviction.[42] As he did in his second motion for compassionate release, Helmstetter references the United States Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 466 (2012), and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), as examples of how sentencing law has changed since he was sentenced.[43] He argues that life sentences for youthful offenders are now disfavored.[44] He also now additionally cites the Youthful Offender amendment to U.S. Sentencing Guidelines policy statement § 5H1.1, which became effective after he filed his last motion for compassionate release, arguing that if he were sentenced today, he would be eligible for a downward departure pursuant to this policy statement due to his "youthfulness at the time of the offense."[45]

---

[41] R. Doc. No. 1369-1, at 8.
[42] *Id.* at 8–9.
[43] *See id.* at 9; *see also* R. Doc. No. 1327, at 9.
[44] R. Doc. No. 1369-1, at 9.
[45] *Id.* at 11. It is important to highlight that, in 2025, the United States Sentencing Commission amended the Guidelines Manual to remove departures and policy statements relating to specific personal characteristics. *See* U.S.S.G. App. C, amendment 836. The Guidelines Manual explains that:

> The Commission envisioned and framed this 2025 amendment to be outcome neutral, intending that judges who would have relied upon facts previously identified as a basis for a departure would continue to have the authority to rely upon such facts to impose a sentence outside of the applicable guideline range as a variance under 18 U.S.C. § 3553(a). The removal of departures from the Guidelines Manual does not limit the information courts may consider in imposing a sentence nor does it reflect a view from the Commission that such facts should no

10

In sum, the government correctly describes Helmstetter's motion as one that recycles many of his previous arguments, but urges a different result based on the fact that the Guidelines were amended.[46] According to the government, binding precedent in this Circuit—specifically, the Fifth Circuit's opinion in *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025)—makes clear that non-retroactive changes in the law, like the ones relied on by Helmstetter, do not constitute "extraordinary and compelling" reasons for a reduction, notwithstanding the amendment to U.S.S.G. § 1B1.13.[47] Additionally, with respect to the policy statement on youthful offenders, the government notes that subsequent versions of the U.S. Sentencing Guidelines have deleted § 5H entirely.[48] The government maintains that no factors Helmstetter cites in support of his motion have "materially changed" since he last sought early release and, therefore, his motion "should fare no better than they did when the Court denied his last motion for compassionate relief in April 2023."[49]

In response, Helmstetter argues that the government's interpretation of *Austin* goes too far and "ignores that this court may consider a combination of factors" when deciding a compassionate release motion.[50] Helmstetter disputes that *Austin* categorically bars consideration of non-retroactive changes in the law and argues that

---

    longer inform a court for purposes of determining the appropriate sentence.

U.S.S.G. ch. 1, pt. A. Amendment 836 became effective on November 1, 2025. *See id.*
[46] *See* R. Doc. No. 1372, at 3.
[47] *See id.* at 4–6 (citing *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025)).
[48] *Id.* at 5.
[49] *Id.* at 4.
[50] *See* R. Doc. No. 1376, at 2–3.

11

"*Austin* held only that a non-retroactive law alone, standing by itself, cannot mandate resentencing."[51] He submits that he, instead, asks this Court to rely on a combination of factors that "numerous" other courts have held constitute extraordinary and compelling circumstances justifying a sentence reduction, including, *inter alia,* his youth at the time of the offense and his "extraordinary rehabilitation."[52]

The Court agrees with the government's interpretation of *Austin*. In *United States v. Austin,* the Fifth Circuit made clear that "a non-retroactive change in the law, . . . [is] 'neither an "extraordinarily severe exigency" nor "unique to the life of the prisoner,"' and therefore 'a non-retroactive change in the law is not an extraordinary or compelling reason to reduce a prisoner's sentence.'" *United States v. Whitman*, No. 25-20035, 2025 WL 3143791, at *1 (5th Cir. Nov. 10, 2025) (quoting *United States v. Austin*, 125 F.4th 688, 692 (2025)). The Fifth Circuit in *Austin* so decided after explicitly recognizing that the November 2023 amendments to § 1B1.13 facially allow consideration of non-retroactive changes in the law; it stated: "True, § 1B1.13(b)(6) of the Sentencing Guidelines says that a nonretroactive 'change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason.' *But that changes nothing.*" See *Austin*, 125 F.4th at 692 (emphasis added). The Fifth Circuit reasoned that the Sentencing Commission "does not have the authority to amend" settled Fifth Circuit precedent that defined extraordinary and compelling in a way that excluded consideration of non-retroactive changes to

---

[51] *Id.* at 3.
[52] *Id.*

12

the law. *Id.* at 691–92 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)). In so holding, the Fifth Circuit abrogated its decision in *United States v. Jean*, which had held that courts were permitted to consider non-retroactive changes in sentencing law as a factor for determining whether extraordinary and compelling reasons exist for compassionate release. *See* 108 F.4th 275, 282 (5th Cir. 2024).[53]

---

[53] Unlike in *Austin*, the Fifth Circuit in *Jean* had based its decision on changes in the law brought about by new judicial interpretations of sentencing law. *See id.* at 280–81 ("In the years after Jean was sentenced, a series of cases redefined what could be considered a controlled-substance offense for the purpose of [the career offender Guideline]."). The Fifth Circuit in *Austin* unequivocally held that *Jean* "was wrongly decided and does not control." *Austin*, 125 F.4th at 692. However, it also noted that "in any event, *Jean* is distinguishable," because

> There, the change in law resulted from a new judicial interpretation of § 4B1.1 of the Sentencing Guidelines. Here, however, the change in law resulted from a new statute that explicitly said it was non-retroactive. Thus, even if *Jean* could be somehow reconciled with *Escajeda* and its progeny, the former could not be applied beyond the specific facts and circumstances of that case.

*Id.* at 693. Helmstetter does not raise this argument. However, the Court notes that this language may suggest the possibility of treating differently motions based on non-retroactive changes in the law resulting from new judicial opinions rather than statutory amendments enacted by Congress. Yet, courts in this Circuit following *Austin* have consistently held that *Austin* precludes considering non-retroactive changes in *any* law. *See, e.g.*, *Cabrera*, 2025 WL 2210731, at *6; *Avila*, 2025 WL 2210733, at *7; *Santivanez*, 2025 WL 1703429, at *4; *see also Whitman*, 2025 WL 3143791, at *1 (treating this argument as "foreclosed" by *Austin*). Absent clarifying Fifth Circuit precedent to the contrary, the Court will not ignore clear directive from the Fifth Circuit that *Jean* "does not control" and that, notwithstanding § 1B1.13(b)(6), Fifth Circuit precedent holds that non-retroactive changes in the law cannot be leveraged to support a compassionate release motion, *see id.* at 692. *See also Santivanez*, 2025 WL 1703429, at *4 (rejecting an argument that changes in law resulting from judicial interpretations survives *Austin* because that "argument is rebuffed by the reasoning in *Austin*. . . . Indeed, the *Austin* Court explicitly held that non-retroactive changes like the one considered in *Jean* cannot be a basis for compassionate release—that is why it held that '*Jean* . . . was wrongly decided and does not control.'" (quoting *Austin*, 125 F.4th at 692)).

13

Courts in the Fifth Circuit post-*Austin* have consistently found that "Fifth Circuit precedent precludes considering non-retroactive changes in *any* law" when determining whether extraordinary or compelling circumstances exist pursuant to § 1B1.13(b)(6). *United States v. Cabrera*, No. 10-140, 2025 WL 2210731, at *6 (E.D. Tex. Aug. 4, 2025) (emphasis in original)); *United States v. Avila*, No. 09-4, 2025 WL 2210733, at *7 (E.D. Tex. Aug. 3, 2025) (same); *United States v. Santivanez*, No. 98-304, 2025 WL 1703429, at *3 (W.D. Tex. Apr. 29, 2025), *report and recommendation adopted*, No. 98-304, 2025 WL 1700054 (W.D. Tex. June 17, 2025) ("In the wake of *Austin*, a number of district courts in this circuit have refused to consider arguments that non-retroactive changes in the law may be considered in determining whether extraordinary and compelling circumstances exist for a sentence reduction.").

The changes in law identified by Helmstetter that account for any discrepancies in his sentence are non-retroactive and, therefore pursuant to *Austin*, cannot be considered for purposes of determining whether extraordinary and compelling circumstances exist to reduce his sentence. *See Austin*, 125 F.4th at 692; *see also Santivanez*, 2025 WL 1703429, at *3 (holding that *Booker* is a non-retroactive change in the law); *United States v. Matute-Carcamo*, No. 19-494, 2025 WL 1677950, at *3 (S.D. Tex. June 13, 2025) ("Amendment 829, the Youthful Offender Amendment – has not been given retroactive application and cannot be considered in the 'extraordinary and compelling reason' calculus.").

The Court also disagrees with Helmstetter's contention that *Austin* held "only that a non-retroactive law alone, standing by itself, cannot mandate resentencing,"

14

and that the Court may consider non-retroactive changes in the law as "part of a multi-factor extraordinary-and-compelling analysis."[54] *Austin* is clear that by definition "a non-retroactive change in the law is not an extraordinary or compelling reason to reduce a prisoner's sentence." *See Austin*, 125 F.4th at 692; *see also United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) ("[A] prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling."). This is true whether a defendant seeks to rely on a change in the law to establish extraordinary and compelling reasons through § 1B1.13(b)(6) or (5), or whether a defendant seeks to rely on a change in the law alone or in combination with other factors. *See United States v. Matute-Carcamo*, No. 19-494, 2025 WL 1677950, at *3 (S.D. Tex. June 13, 2025) (rejecting the defendant's argument that "changes in the law [could] . . . constitute extraordinary and compelling reasons for a sentence reduction under § 1B1.13(b)(5), standing alone or in combination with other considerations" (citing *Austin*, 125 F.4th at 693)).[55]

---

[54] R. Doc. No. 1376, at 3.

[55] To be sure, as it pertains to Helmstetter's § 1B1.13(b)(5) argument, § 1B1.13(c) states: "Except as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." In other words, § 1B1.13(c) explicitly limits a district court's consideration of changes in the law, for purposes of determining whether extraordinary and compelling reasons exist, to those circumstances that satisfy § 1B1.13(b)(6). Consequently, to the extent that Helmstetter relies on changes in the law to support his argument that "other" extraordinary and compelling reasons exist pursuant to § 1B1.13(b)(5), that reliance is inconsistent with the policy statement.

15

Furthermore, Helmstetter has not demonstrated that these changes in the law would produce a gross disparity between his sentence and the sentence likely to be imposed today, as is required by § 1B1.13(b)(6). As this Court pointed out when evaluating the compassionate release motion of one of Helmstetter's co-defendants, "*Apprendi* and *Alleyne* hold only that facts which increase a defendant's statutory maximum or mandatory minimum sentence must be determined by a jury beyond a reasonable doubt. These cases do not apply to facts that increase a defendant's sentencing guidelines range."[56] Because "application of the first-degree murder cross-reference did not increase [the] statutory maximum or mandatory minimum sentence" of Helmstetter, *Alleyne* cannot serve as a basis for establishing extraordinary and compelling reasons for a reduction in Helmstetter's case.[57] *See also United States v. Rincon-Rincon*, No. 24-40414, 2025 WL 1008530 (5th Cir. Apr. 4, 2025) (holding that *Alleyne* and *Apprendi* did not constitute changes in the law for purposes of § 1B1.13(b)(6) because they would not "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the [compassionate release] motion [was] filed" (quoting § 1B1.13(b)(6)).

Accordingly, although the amended § 1B1.13 was not available to Helmstetter when he filed his previous compassionate release motions, it does not now help him establish that extraordinary and compelling reasons justifying a reduction in his

---

[56] R. Doc. No. 1353, at 11 (citing *United States v. Hinojosa*, 749 F.3d 407, 412 (5th Cir. 2014)).
[57] *Cf. id* at 12.

16

sentence exist in his case.[58] The cases cited by Helmstetter that reach a different conclusion are out-of-circuit cases that were not bound by *Austin* and that, in any event, are not binding on this Court. *United States v. Traweek*, No. 13-712, 2025 WL 1490306, at *3 (S.D. Tex. May 23, 2025) ("Out-of-circuit opinions are, at best, persuasive authority, not binding precedent." (citing *Garcia v. Amfels, Inc.*, 254 F.3d 585, 588 (5th Cir. 2001))).

### c. *§ 3553(a) factors*

The government maintains that even if the Court were to find that extraordinary and compelling reasons for a reduction existed, Helmstetter has provided the Court with no new information that would justify a different finding with respect to the § 3553(a) factors than what this Court twice previously found when rejecting Helmstetter's last two motions for compassionate release.[59]

---

[58] When evaluating Helmstetter's second motion for compassionate release, this Court found that it "may consider the defendant's youth at the time of his offense and conviction when determining whether extraordinary and compelling circumstances exist." *See* R. Doc. No. 1327, at 11. This aligned with decisions made by other district courts in the Fifth Circuit. *See, e.g., United States v. Lebaron*, No. 92-177-05, 2023 WL 7308116 (S.D. Tex. Nov. 6, 2023); *United States v. Lee*, No. 04-11, 2021 WL 3129243, at *4–5 (E.D. La. July 23, 2021). However, those cases predated the Fifth Circuit's opinion in *Austin* and otherwise relied on non-retroactive changes to the law, which *Austin* deemed impermissible. *See, e.g., Lebaron*, 2023 WL 7308116, at *7 (relying on changing Supreme Court interpretations of sentencing law with respect to youthful defendants). While, theoretically, a defendant's unusually long sentence or "youth at the time of the offense and the impact of a traumatic upbringing can serve as extraordinary and compelling reasons to reduce a mandatory life sentence when considered in light of emerging scientific research," *id.* at *8, if considered without *also* considering non-retroactive changes to the law, the Court cannot contemplate how such a consideration would work in reality.

[59] *See id.* at 7 ("Nothing in the past two years, since Helmstetter last sought compassionate release, counsels in favor of a different result now.").

17

Helmstetter argues that the government's reliance on this Court's prior § 3553(a) findings is inappropriate because "[e]very additional year of imprisonment, especially after the three-decade mark, alters" the analysis of these factors.[60] The Court should instead rely on the "most up-to-date picture" of Helmstetter when conducting the § 3553(a) analysis, which includes considering his "extensive evidence of rehabilitation" and his "strong support network and structured release plan."[61] He also emphasizes that legal developments, whether retroactive or not, may "inform" the § 3553(a) analysis.[62] Helmstetter states that he is a changed man and asks this Court to give him a "second chance . . . to reclaim his life" by granting his request for release.[63]

Even if the Court had found that extraordinary and compelling circumstances existed, the § 3553(a) factors independently counsel against reducing Helmstetter's sentence.[64] Although the Court agrees with Helmstetter that its analysis of the § 3553(a) factors should not be frozen in time, he has not presented this Court with any new argument or information that was not before this Court when it last denied

---

[60] R. Doc. No. 1376, at 6.
[61] *Id.* at 7.
[62] *Id.* at 4 ("These are entirely appropriate considerations under § 3553(a), regardless of retroactivity."); *see also* R. Doc. No. 1377, at 10.
[63] R. Doc. No. 1377, at 24–26. Helmstetter also suggests in his second reply that the Court could modify his sentence by reducing his period of incarceration and imposing a period of supervised release. *See id.* at 24–25.
[64] R. Doc. No. 1327, at 9–13 (noting that even if the Court were to consider Helmstetter's youth at the time of his offense and conviction when determining whether extraordinary and compelling reasons exist, his motion would be denied because his "arguments regarding the § 3553 analysis" fail).

Helmstetter's motion for compassionate release in 2023.[65] As this Court previously noted:

> Helmstetter is currently serving three life sentences, to be followed by an additional 240 months, for "committing murder and other violent crimes in aid of racketeering activity." *Tolliver*, 61 F.3d at 1196. The underlying drug conspiracy distributed "approximately 1000 kilograms of cocaine" (or nearly two-and-a-quarter tons) in and around New Orleans. *Id.* His sentence therefore serves the purpose of protecting the public from future crimes—including violent crimes—that he may commit if released. 18 U.S.C. § 3553(a)(1), (2)(C). Defendant's sentence also reflects the seriousness of the offenses—involvement in several murders and an extensive drug conspiracy. *See* 18 U.S.C. § 3553(a)(2)(A). Helmstetter's sentence may also be justified as a means of promoting respect for the law and to deter future similar conduct. *See* 18 U.S.C. § 3553(a)(2)(B)–(C). In summary, the § 3553(a) factors weigh against granting Helmstetter's motion for compassionate release.[66]

While the Court commends Helmstetter's ongoing rehabilitative efforts, the Court continues to find that the § 3553(a) factors—particularly, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need for the sentence imposed "to reflect the seriousness of the offense, [or] to promote respect for the law," (3) the need "to afford adequate deterrence to criminal conduct," and (4) the need to "protect the public from further crimes of the defendant"[67]—counsel against granting Helmstetter's motion for a reduction in his sentence. *Cf. United States v. Tolbert*, No. 25-10430, 2025 WL 2305397 (5th Cir. Aug.

---

[65] *See* R. Doc. No. 1304, at 4 (Helmstetter arguing that "[i]t would be unfair to argue that [he] is a danger to the community today" based on "actions [he took as] a juvenile with an undeveloped[d] brain . . . ." (internal quotations omitted)); *id.* (arguing that "the need for the sentence imposed appears weaker after" he has been incarcerated for 32 years); *id.* (discussing the "over 50 plus programs" he has completed while incarcerated, including the "challenge program" and "Stop the Violence" program).
[66] R. Doc. No. 1327, at 13–14.
[67] 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C).

11, 2025) (finding no abuse of discretion where the court "acknowledged [the defendant's] rehabilitative efforts and his pursuit of education and training while in prison" but nonetheless concluded that the balance of § 3553(a) factors weighed against granting the motion for release).

### IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Helmstetter's motion[68] for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **DENIED**.

New Orleans, Louisiana, December 18, 2025.

                                      _____
                                              LANCE M. AFRICK
                                      UNITED STATES DISTRICT JUDGE

---

[68] R. Doc. No. 1369.